IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSELYN RAMOS, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>PUMA NORTH AMERICA, INC.,<br><br>       Defendant. | Case No. 1:21-cv-3192 |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant PUMA North America, Inc. ("PUMA"), through counsel, hereby removes this case from the Circuit Court of Cook County, Illinois to the U.S. District Court for the Northern District of Illinois, Eastern Division. In support of removal, PUMA states as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(d)(2). This action is therefore removable pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b). This is a class action in which the size of the proposed class exceeds 100 members; there is diversity of citizenship between at least one member of the putative class of plaintiffs and one defendant; and the amount in controversy exceeds $5 million, exclusive of interest and costs.

2. Removal to this Court is proper because the U.S. District Court for the Northern District of Illinois embraces the Circuit Court of Cook County, Illinois, where Plaintiff filed this action. *See* 28 U.S.C. §§ 93(a)(1), 1442(a).

## STATE COURT ACTION

3. On March 1, 2021, Plaintiff Joselyn Ramos ("Plaintiff") filed a putative Class Action Complaint in the Circuit Court of Cook County, Illinois, County Department, Chancery Division (Case No. 2021-CH-00966), alleging that PUMA violated Illinois's Biometric Information Privacy Act ("BIPA"), 740 ILCS 41/1, *et seq*. See **Exhibit A**, attached hereto.

4. Plaintiff alleges that PUMA: collected and stored her biometric information through its "biometric time tracking system"; "did not . . . [p]rovide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's . . . fingerprints"; and "did not [p]roperly inform Plaintiff . . . in writing of the specific purpose and length of time for which [her] fingerprints were being collected, stored, and used," nor "[r]eceive a written release from Plaintiff . . . to collect, capture, or otherwise obtain fingerprints." *Id.* ¶¶ 2, 5. Plaintiff further alleges that she brought this action seeking an order "requiring [PUMA] to cease the unlawful activities discussed herein" and "liquidated damages" based on PUMA's alleged BIPA violations. *Id.* ¶ 6.

5. Plaintiff alleges PUMA violated BIPA by: (1) "maintain[ing] custody and control" of Plaintiff's biometric information while "failing to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information," in alleged violation of BIPA Section 15(a), *id.* ¶¶ 42–43; and (2) collecting Plaintiff's biometric information without providing the requisite notice and obtaining Plaintiff's written release, in alleged violation of BIPA Section 15(b), *id.* ¶ 51.

6. Plaintiff requests, on behalf of herself and the class, an order awarding: injunctive relief by requiring PUMA to comply with BIPA; statutory damages of $5,000 for each willful or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2); statutory damages of $1,000 for each

negligent violation of BIPA, pursuant to 740 ILCS 14/20(1); and reasonable litigation expenses and attorneys' fees. *Id.* at p. 13.

7. On May 17, 2021, Plaintiff served a copy of the Complaint and Summons on PUMA. *See* Ex. A.

8. No further proceedings have occurred in the state court action. *See* **Exhibit B**, attached hereto (Cook County Clerk of the Circuit Court, Electronic Docket Search, Case Information Summary for Case Number 2021-CH-00966 (June 14, 2021)).

## TIMELINESS

9. Removal is timely because PUMA filed this Notice within thirty days of service of the Complaint, which was on May 17, 2021. *See* 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1)(C).

## GROUNDS FOR REMOVAL: CLASS ACTION FAIRNESS ACT

10. This Court has original jurisdiction under CAFA because (a) the putative class includes more than 100 members; (b) there is minimal diversity of citizenship; and (c) the amount in controversy exceeds $5 million.

### CLASS SIZE

11. The class Plaintiff seeks to represent includes more than 100 members. The proposed class includes "[a]ll residents of the State of Illinois who had their biometrics, including scans of their fingerprints, collected, captured, received, otherwise obtained, or disclosed by [PUMA] while residing in Illinois." Ex. A ¶ 32.

12. Plaintiff alleges that PUMA "collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of employees who fall into the definition of the Class." *Id*. ¶ 33. Solely for the purposes of removal, and without conceding that Plaintiff or the class is entitled to any relief, PUMA assumes Plaintiff's allegation that the

3

proposed class includes "hundreds of employees" is true. *See Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 581 (7th Cir. 2017) ("[D]efendant may rely on the estimate of the class number set forth in the complaint.").

## MINIMAL DIVERSITY OF CITIZENSHIP

13. There is minimal diversity of citizenship among the parties. Minimal diversity exists when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

14. Plaintiff is a natural person and citizen of Illinois. Ex. A ¶ 7.

15. PUMA is a Delaware corporation with its principal place of business in Westford, Massachusetts. *Id.* ¶ 8. A corporation is "a citizen of every [s]tate . . . by which it has been incorporated and of the [s]tate . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Thus, PUMA is a citizen of Delaware and Massachusetts for diversity purposes.

16. Accordingly, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A). *See, e.g., Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 965–66 (7th Cir. 2016) (minimal diversity under CAFA existed when class representative was Illinois citizen and defendant was Delaware corporation with principal place of business in Arizona).

## AMOUNT IN CONTROVERSY

17. The amount in controversy under CAFA is satisfied if "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). For purposes of determining the amount in controversy, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

18. To demonstrate that the amount-in-controversy requirement is met, PUMA need only plead that there is a "reasonable probability that the stakes exceed the minimum." *Brill v.*

*Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). Indeed, "[a] good-faith estimate is acceptable if it is plausible and adequately supported by the evidence." *Blomberg v. Serv. Corp. Int'l*, 639 F.3d. 761, 763 (7th Cir. 2011) (citation omitted); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 135 S. Ct. 547, 553 (2014) (defendant's good-faith estimate of amount in controversy is sufficient for removal purposes).

19. PUMA denies the merits of Plaintiff's claims and denies that Plaintiff or the putative class are entitled to any monetary or other relief. Solely for purposes of CAFA jurisdiction, however, the amount in controversy exceeds $5 million.

20. Plaintiff alleges "willful and/or reckless" violations of BIPA, *e.g.*, Ex. A at p. 13, which carry statutory damages of $5,000 "per violation." *See* 740 ILCS 14/20. Plaintiff also alleges at least two separate BIPA "violations" in Counts I–II, and that a separate BIPA "violation" occurred "[e]ach time Plaintiff began and ended a workday" when she was allegedly required to scan her fingerprint. Ex. A ¶ 27; *see also id.* at p. 13 (requesting "statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA" and "statutory damages of $1,000 for *each* negligent violation of BIPA) (emphasis in original). Consistent with the alleged class size of "at least hundreds of employees," *id.* ¶ 33, PUMA estimates it has had approximately 240 employees in Illinois since 2016. Thus, based solely on the Complaint's allegations (which PUMA denies), if each class member is entitled to recover for only three days of work (three times clocking in and three times clocking out)—which would amount to six "violations"—recovery of greater than $5 million is legally possible (*i.e.*, 240 class members x $5,000 statutory damages x 6 violations = $7.2 million).[1] *See Spivey v. Vertrue*, 528 F.3d 982, 986 (7th Cir. 2008) ("Once the proponent of

---

[1] PUMA includes this amount in controversy based solely on the Complaint's allegations and does not concede Plaintiff's allegations are correct. PUMA also does not concede that every fingerprint scan represents a separate violation of BIPA. Moreover, in providing this estimate of the size of the putative class, PUMA reserves all rights regarding the statute of limitations applicable to claims under BIPA.

federal jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (internal citation omitted).

## **GROUNDS FOR REMOVAL: DIVERSITY JURISDICTION**

21. This Court also has complete diversity jurisdiction under 28 U.S.C. § 1332(a), which provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between— (1) citizens of different States."

22. Complete diversity exists between Plaintiff (an Illinois citizen) and PUMA (a Delaware corporation with its principal place of business in Massachusetts). Ex. A ¶¶ 7–8.

23. Based on the Complaint's allegations, the amount in controversy exceeds $75,000. Plaintiff alleges that PUMA's BIPA violations were "willful and/or reckless," thereby seeking a statutory penalty of up to $5,000 for each "violation." Ex. A at p. 13. Plaintiff alleges that each time she clocked into and out of work using her "fingerprint" constituted an independent "violation." *See, e.g., id.* ¶¶ 21, 27. Based on this approach, the jurisdictional amount-in-controversy threshold would be satisfied if Plaintiff clocked in and out only 16 times—*i.e.*, if Plaintiff worked only eight days at PUMA (16 x $5,000 = $80,000). The amount in controversy exceeds $75,000 because PUMA's records indicate that Plaintiff worked at a PUMA location in Illinois for more than six years.

### ARTICLE III STANDING

24. Standing exists under Article III of the U.S. Constitution for Plaintiff's BIPA claims.[2] *First*, standing exists for Plaintiff's Section 15(a) claim. In *Fox v. Dakkota Integrated*

---

[2] That Plaintiff's allegations establish Article III standing to bring her BIPA claims in federal court does not mean that those claims—which PUMA denies—are adequately pleaded, because standing is an inquiry

6

*Systems, LLC*, the Seventh Circuit held that a plaintiff alleges an injury in fact under Section 15(a) for standing purposes when the plaintiff alleges a defendant "violat[ed] the full range of its section 15(a) duties by failing to develop, publicly disclose, *and comply with* a data-retention schedule and guidelines for the permanent destruction of biometric data when the initial purpose for collection ends." 980 F.3d 1146, 1154 (7th Cir. 2020) (emphasis in original).

25. Here, Plaintiff alleges that BIPA "requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first." Ex. A ¶ 17. Plaintiff further alleges that PUMA "fail[ed] to publicly provide a retention schedule or guideline for permanently destroying its employees' biometric identifiers and biometric information," "maintains custody and control of the biometric information it possesses on its servers," and "unlawfully . . . *stores* . . . its employees' biometric identifiers and information." *Id.* ¶¶ 24, 42–43 (emphasis added).

26. These allegations describe a concrete and particularized injury for Article III purposes because they reasonably suggest that PUMA failed to develop *and follow* a biometric retention schedule. *See Fox*, 980 F.3d at 1154–55 (explaining that BIPA recognizes a substantive right to privacy in a person's biometric data, and unlawful retention of that data is a concrete and

---

distinct from the merits. *See Construction Indus. Retirement Fund of Rockford v. Kaspar Trucking, Inc.*, 10 F.3d 465, 467 (7th Cir. 1993) ("[A] litigant doomed to lose does not for that reason lack standing to sue."); *Coleman v. United States*, 454 F. Supp. 2d 757, 766 n.8 (N.D. Ill. 2006) ("A finding that plaintiff has standing simply means that the plaintiff is entitled to walk through the courthouse door and raise his grievance before a federal court; it is a threshold determination that is conceptually distinct from whether the plaintiff is entitled to prevail on the merits.") (internal quotation marks omitted) (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1280 (11th Cir. 2001)).

particularized injury). The allegations here are similar to those in *Kalb v. Gardaworld Cashlink LLC*, Case No. 1:21-cv-01092, 2021 WL 1668036, at *3 (C.D. Ill. Apr. 28, 2021), where the court held that references to deletion policies "reasonably suggest[ed] [d]efendant has unlawfully retained [plaintiff's] data."

27. *Second*, standing exists for Plaintiff's Section 15(b) claim under *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020) ("Compass's failure to abide by the requirements of section 15(b) before it collected Smart Market users' fingerprints denied Bryant and others like her the opportunity to consider whether the terms of that collection and usage were acceptable given the attendant risks. . . . This deprivation is a concrete injury-in-fact that is particularized to Bryant. She thus meets the requirements for Article III standing on her section 15(b) claim.").

## NOTIFICATIONS

28. PUMA will promptly provide written notice to Plaintiff, through counsel, of the removal, in accordance with 28 U.S.C. § 1446(d).

29. PUMA will file a copy of its Notice of Removal with the Clerk of the Circuit Court of Cook County, Illinois, County Department, Chancery Division, in accordance with 28 U.S.C. § 1446(d).

## NON-WAIVER

30. If this Court determines that the pleadings and other documents to date lack adequate information from which to ascertain the prerequisites to jurisdiction under CAFA, the removal clock will have not begun to run, and PUMA reserves the right to remove this action at the appropriate time. *See Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 821 (7th Cir. 2013).

31. PUMA reserves all defenses and objections it may have to this action, without conceding either the Complaint's allegations or that Plaintiff has pleaded claims upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, this action is properly removed to this Court.

DATE: June 14, 2021  **MORGAN, LEWIS & BOCKIUS LLP**

/s/ *Elizabeth B. Herrington*
Elizabeth B. Herrington
Gregory T. Fouts
Tyler Z. Zmick
Alborz Hassani
110 North Wacker Drive, Suite 2800
Chicago, Illinois 60606
T: (312) 324-1445
F: (312) 324-1001
beth.herrington@morganlewis.com
gregory.fouts@morganlewis.com
tyler.zmick@morganlewis.com
al.hassani@morganlewis.com

*Counsel for Defendant PUMA North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of June, 2021, I caused a true and correct copy of the foregoing **Notice of Removal** to be filed through the Court's CM/ECF System and served the below Counsel of Record via electronic mail:

> Benjamin H. Richman
> Ari J. Scharg
> J. Eli Wade-Scott
> Schuyler Ufkes
> EDELSON PC
> 350 North LaSalle Street, 14th Floor
> Chicago, Illinois 60654
> Tel: (312) 589-6370
> Fax: (312) 589-6378
> brichman@edelson.com
> ascharg@edelson.com
> ewadescott@edelson.com
> sufkes@edelson.com

                                                    /s/ *Elizabeth B. Herrington*
                                                      Elizabeth B. Herrington