## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSELYN RAMOS, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No.: 21-cv-03192 |
| v. | Hon. Sharon Johnson Coleman |
| PUMA NORTH AMERICA, INC., a Delaware limited liability company, | |
| *Defendant*. | |

## PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF FINAL <u>APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND....................................................................................................2

      A.    Nature of the Litigation ...............................................................................2

      B.    The Claims ..................................................................................................2

      C.    Procedural History .....................................................................................2

III.    TERMS OF THE SETTLEMENT AGREEMENT.........................................5

      A.    Class Definition ..........................................................................................5

      B.    Monetary Relief ..........................................................................................5

      C.    Prospective Relief .......................................................................................6

      D.    Payment of Settlement Notice and Administrative Costs ...........................6

      E.    Payment of Attorneys' Fees, Costs, and Incentive Award ................................6

      F.    Release of Liability.....................................................................................6

IV.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS .....................7

V.     THE SETTLEMENT WARRANTS FINAL APPROVAL............................8

      A.    Plaintiff and Class Counsel have Adequately Represented the Class ...........10

      B.    The Settlement Is the Product of Arm's-Length, Non-Collusive
            Negotiations ..............................................................................................11

      C.    The Settlement Treats Class Members Equally ................................................13

      D.    The Relief Secured for the Settlement Class is Adequate and Warrants
            Final Approval ..........................................................................................13

            1.    *The Relief Provided by the Settlement is Excellent* ................................14

            2.    *The Cost, Risk, and Delay of Further Litigation Compared to the*
                *Settlement's Benefits Favors Final Approval* .........................................16

3.      *The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval* ................................................................ 19

4.      *The Terms of the Requested Attorneys' Fees are Reasonable* .............. 20

E.      **The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement** ................................................................ 21

1.      *The Reaction of the Settlement Class Favors Approval* ........................ 21

2.      *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval*................................................ 22

3.      *The Settlement Raises No Red Flags* ..................................................... 22

VI.     **CONCLUSION** ................................................................................................. 23

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...................................................................................7

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999).................................................................................13

**United States Circuit Court of Appeals Cases**

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) .................................................................22

*Golan v. FreeEats.com, Inc.*,
    930 F.3d 950 (8th Cir. 2019) .................................................................18

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ...............................................................17

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ...................................................................9

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...................................................................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...................................................................9

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*,
     309 F.3d 978 (7th Cir. 2002) ..................................................................9

*U.S. v. Dish Network L.L.C.*,
    954 F.3d 970, 980 (7th Cir. 2020) .........................................................18

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ................................................................18

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...................................................... *passim*

**United States District Court Cases**

*Adkins v. Facebook, Inc.*,
    No. 18-cv-05982-WHA (N.D. Cal. May 6, 2021) ..................................15

No. 18-cv-05982-WHA (N.D. Cal. July 13, 2021)............................................................15

*Alvarado v. Int'l Laser Prods., Inc.*,
   No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) .........................................................................20

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..........................................21

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
   No. 18-cv-7018 (N.D. Ill Sept. 20, 2020) ...................................................................15, 20

*Cruz v. The Connor Grp., LLC*,
   No. 22-cv-01966 (N.D. Ill. Jan. 24, 2023) ..................................................................19, 20

*Goldsmith v. Tech. Sols. Co.*,
   No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .........................................16

*Howe v. Speedway LLC*,
   No. 19-cv-01374 (N.D. Ill.) .............................................................................................17

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ...........................................................................14, 19

*In re Google LLC Street View Elec. Commc'ns Litig.*,
   No. 10-md-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..........................14

*In re Google Plus Profile Litig.*,
   No. 5:18-cv-06164 (N.D. Cal. Jan. 25, 2021) ...................................................................14

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019)........................................................................................10

*Lopez-McNear v. Superior Health Linens, LLC*,
   No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) ...................................................................19, 20

*McDaniel v. Qwest Commc'ns Corp.*,
   No. CV 05 C 1008, 2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ..................................21

*Montgomery v. Peri Framework Sys., Inc.*,
   No. 20-cv-07771 (N.D. Ill. Nov. 9, 2021) ........................................................................15

*Neals v. ParTech, Inc.*,
   No. 19-cv-05660 (N.D. Ill. July 20, 2022) ........................................................................20

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ....................................21, 22

*Rogers v. BNSF Ry. Co.*,
    No. 19-cv-03083, 2023 WL 4297654 (N.D. Ill. June 30, 2023)........................................18

*Schulte v. Fifth Third Bank*,
    No. 09-CV-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .....................................11

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................................7, 16, 22

*Sherman v. Brandt Industries USA LTD*,
    No. 20-cv-01185 (C.D. Ill. July 26, 2022)......................................................................16

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 c 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018)..........................................10

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ......................................9, 11

**State Supreme Court Cases**

*Cothron v. White Castle Sys., Inc.*,
    2023 IL 128004...............................................................................................................18

*Tims v. Black Horse Carriers, Inc.*,
    2023 WL 1458046 ..............................................................................................................4

**State Circuit Court Cases**

*Bankhead v. Pacesetter Steel Service, Inc.*,
    2021-CH-01325 (Cir. Ct. Cook Cnty.) .............................................................................15

*Carroll v. Crème de la Crème, Inc.*,
    2017-CH-01624 (Cir. Ct. Cook Cnty.) .............................................................................15

*Kane v. ConTech Lighting*,
    2018-CH-12194 (Cir. Ct. Cook Cnty.) .............................................................................15

*Lark, et al v. McDonald's USA, LLC, et al.*,
    No 17-L-559 (Cir. Ct. St. Clair Cnty.) .............................................................................15

*Redmond v. Keystone Indus. Services, Inc.*,
    2019-CH-11150 (Cir. Ct. Cook Cnty.) .............................................................................15

*Zhirovetskiy v. Zayo Grp., LLC*,
    2017-CH-09323 (Cir. Ct. Cook Cnty.) .............................................................................15

**Miscellaneous Authority**

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS
§ 13:53 (6th ed.) ................................................................................................. 19

740 ILCS 14 ................................................................................................. *passim*

Federal Judicial Center,
*Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide
2010*, available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf ............................ 7

Fed. R. Civ. P. 23 ................................................................................................. *passim*

Illinois House Transcript, 2008 Reg. Sess. No. 276 ................................................................ 2

## I.      INTRODUCTION

Plaintiff Joselyn Ramos ("Plaintiff") filed this class action lawsuit against her former employer Defendant PUMA North America, Inc. ("Defendant" or "Puma") for allegedly violating the Biometric Information Privacy Act ("BIPA") by requiring its employees to use finger-scanning timeclocks as a means of tracking their time. Despite collecting and storing its employees' biometric data via the timeclocks, Plaintiff alleges that Puma failed to first obtain her and other employees' consent, or establish and abide by a publicly-available retention and deletion policy for biometric data. After over two years of litigation, the Parties reached a Settlement, which the Court preliminarily approved on May 3, 2023.[1] The Settlement creates a non-reversionary Settlement Fund of $179,200.00, which will be distributed to each of the 128 Class Members via direct checks or electronic payments, without the need for Class Members to submit claims. After any awarded fees and costs are paid, each Class Member will receive a Settlement Payment for approximately $740.00. The Settlement also required Puma to destroy all biometric data collected from its former employees, and, going forward, if Puma continues to use biometric technology, Puma has agreed to create and maintain a written retention schedule and policy for destroying biometric data in its possession, destroy all biometric data in its possession pursuant to that policy, and obtain informed consent from Illinois employees before collecting their biometric data.

In accordance with the Court's Preliminary Approval Order, on May 3, 2023, direct notice was disseminated to *all* 128 members of the Settlement Class via U.S. Mail and email, and successfully reached *every member* of the Settlement Class. The Settlement Website, www.RamosBIPASettlement.com, has been available 24/7 since May 18, 2023, with access to

---

[1]      Capitalized terms used in this Motion are those used in the Class Action Settlement Agreement ("Settlement" or "Agreement") attached hereto as Exhibit 1.

the long form Internet notice and key documents, including the Settlement Agreement itself and Plaintiff's motion for preliminary approval of the Settlement. Class Counsel filed their motion for attorneys' fees and Plaintiff's requested incentive award on July 12, 2023, which was promptly posted to the Settlement Website. Given the strength of the Settlement, the Objection/Exclusion Deadline of July 26, 2023 has come and gone without a single objection to the Settlement or request for exclusion having been received.

For these reasons, and as detailed below, this Settlement is exceptional. The factors to be considered under Rule 23 when determining whether to grant final approval to a class action settlement weigh in favor of approving this one. Thus, the Court may appropriately grant final approval.

## II.     BACKGROUND

Though Plaintiff has detailed the case background in her preliminary approval motion and motion for attorneys' fees (dkts. 60, 66), it is set forth in brief below for ease of reference.

### A.     Nature of the Litigation.

The Biometric Information Privacy Act was passed after the bankruptcy of a company called Pay By Touch, which had partnered with gas stations and grocery stores in Illinois to install checkout terminals that used fingerprint scanning to authenticate purchases. When Pay By Touch's parent company declared bankruptcy at the end of 2007, it began shopping its Illinois consumers' fingerprint database as an asset to its creditors. This decision was met with public backlash, and while a bankruptcy court ordered the destruction of the database, the Illinois legislature recognized the "very serious need" to protect Illinois citizens' biometric data. *See* Ill. House Tr., 2008 Reg. Sess. No. 276. Therefore, in 2008, the Illinois Legislature passed BIPA, which makes it unlawful for any private entity to collect and store consumers' biometric data

2

unless it first (i) obtains their informed written consent, (ii) provides details related to the data's purpose and storage, and (iii) establishes a publicly-available retention and destruction policy. *See* 740 ILCS § 14/15. If a company fails to comply with BIPA's provisions, the statute provides for a civil private right of action allowing consumers to recover $1,000 for negligent violations or $5,000 for willful violations. *See id.* § 14/20.

### B.     The Claims

Plaintiff claims that her former employer, Puma, used a biometric time and attendance system to authenticate and monitor her and other employees' working hours. (Compl. ¶¶ 26-27.) Plaintiff alleges that when she started working at Puma, she—like all other new Puma employees—was required to scan her fingerprint on a biometric timeclock, which Puma then stored in its database. (*Id.*) She alleges that Puma failed to obtain her and other employees' informed, written consent prior to collecting their biometric data. (*Id.* ¶¶ 2, 20-23, 28-30.) She claims she was subsequently required to scan her fingerprint each time she clocked in and out of work. (*Id.* ¶¶ 26-27.) In doing so, Plaintiff alleges that Puma violated section 15(b) of BIPA by collecting her and other employees' fingerprints without first obtaining their informed, written consent, and also alleges that Puma violated section 15(a) of BIPA by failing to establish and abide by a publicly-available retention and destruction policy for permanently destroying biometric data. (*Id.* ¶¶ 38-53.) Puma denies that it has engaged in any wrongdoing. (Dkt. 32.)

### C.     Procedural History

On March 1, 2021, Plaintiff filed this putative class action against Puma in the Circuit Court of Cook County, Illinois, and Puma promptly removed the case to this Court. (Dkt. 1). Shortly after removal, in July of 2021, Class Counsel and Defendant's counsel began discussing the possibility of settlement. (Declaration of Schuyler Ufkes ("Ufkes Decl."), attached as Exhibit

2, at ¶ 2.) As part of these discussions, Puma provided informal discovery to Class Counsel regarding the size and composition of the putative class, and the consent forms Puma used. (*Id.*) On September 30, 2021, Puma answered the complaint, denying liability and asserting twenty-eight affirmative defenses. (Dkt. 32.)

The Parties then began written discovery, with Plaintiff serving Puma with an initial set of interrogatories and document requests, which Puma answered. (Ufkes Decl. ¶ 3.) The Parties also exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1). (*Id.* ¶ 4.) While discovery was ongoing, Puma moved to stay proceedings pending rulings by the Illinois Supreme Court in four BIPA cases, which Plaintiff opposed. (Dkts. 35, 38.) The Court ultimately stayed the case. (Dkt. 39.) While the stay was in place, the Parties continued to engage in settlement discussions, ultimately participating in a formal mediation with Judge Holderman (Ret.) of JAMS in May of 2022, though the Parties were unable to reach an agreement at that mediation. (Ufkes Decl. ¶ 5.) Several months later, the Parties learned that the Illinois Supreme Court would be releasing an opinion in *Tims v. Blackhorse Carriers, Inc*., which would clarify the statute of limitations that applies to BIPA claims and determine the size of the putative class. (*Id.* ¶ 6.) The Parties promptly renewed their settlement discussions, and ultimately reached an agreement in principle the day before the *Tims* opinion was released, executing a binding Memorandum of Understanding on February 6, 2023. (*Id.* ¶ 7.) Over the next two months, the Parties prepared and negotiated the final terms of the Settlement. (*Id.*)

The final Settlement Agreement was executed by the Parties on March 28, 2023. Plaintiff then promptly moved for preliminary approval of the settlement (dkt. 60), which the Court granted on May 3, 2023. (Dkt. 65.) Most recently, Plaintiff's counsel moved for attorneys' fees, expenses, and Plaintiff's incentive award on July 12, 2023. (Dkt. 66.)

### III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth in the Class Action Settlement Agreement, (Ex. 1), and are briefly summarized here:

**A.   Class Definition:** In the Preliminary Approval Order, the Court certified a Settlement Class of "[a]ll current and former employees of Puma who used a finger scanner at a Puma facility in the State of Illinois between March 1, 2016 and May 3, 2023." Excluded from the Settlement Class are: "(1) persons who executed Defendant's consent form related to the collection, use, disclosure, retention, and destruction of biometric data prior to their first use of Defendant's timekeeping system, (2) persons who have signed an arbitration agreement with Defendant, (3) any Judge or Magistrate presiding over this action and members of their families, (4) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (5) persons who properly execute and file a timely request for exclusion from the Settlement Class, (6) the legal representatives, successors or assigns of any such excluded persons." (Dkt. 65 ¶ 3; Agreement §1.22.) The Settlement Class includes 128 individuals.[2]

**B.   Monetary Relief:** Puma has agreed to create a non-reversionary Settlement Fund in the amount of $179,200.00 for the benefit of the Settlement Class. (Agreement § 1.24.) Each Class Member will automatically receive a *pro rata* portion of the Settlement Fund, without ever having to file a claim. That means, after fees and costs are deducted, all 128 Class Members will

---

[2]   Ramos was not included in Puma's initial class size count of 127 class members that was reported to the Court at preliminary approval. After including Ms. Ramos, the class size is now 128, and Puma has increased the amount of the Settlement Fund by adding $1,400 to the fund, for a total of $179,200. These changes do not affect the right of any other Class Members.

receive a Settlement Payment for approximately $740 via check or an electronic payment method of their choice (e.g., PayPal, Venmo, or Zelle). No amount will revert to Puma.

**C.** **Prospective Relief:** Pursuant to the Settlement, Puma has agreed that if it continues to use biometric technology going forward, it will first obtain informed written consent, establish and maintain a publicly-available retention schedule and guidelines for permanently destroying any biometric data, and has agreed to destroy biometric data in its possession pursuant to that policy. (*Id*. § 2.2.) Puma has also destroyed any biometric data in its possession belonging to any former employees in Illinois. (*Id*.)

**D.** **Payment of Settlement Notice and Administrative Costs:** Puma has and will continue to pay from the Settlement Fund all expenses incurred by the Settlement Administrator in, or associated with, administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, disbursing Settlement Payments by mail and electronic means, and any other related expenses. (*Id.* § 1.24.)

**E.** **Payment of Attorneys' Fees, Costs, and Incentive Award:** Puma has agreed to pay Plaintiff's reasonable attorneys' fees and unreimbursed expenses in an amount to be determined by the Court, to be paid from the Settlement Fund. (*Id.* § 8.1.) Class Counsel voluntarily agreed to limit their request for fees to 35% of the Settlement Fund. (*Id.*) Puma has also agreed to pay Plaintiff an incentive award in the amount of $5,000 from the Settlement Fund, subject to Court approval, in recognition of her efforts on behalf of the Settlement Class. (*Id.* § 8.2.) Class Counsel made these requests by separate motion filed on July 12, 2023, (dkt. 66), which was (and still is) posted on the Settlement Website for Class Members to review.

**F.** **Release of Liability:** In exchange for the relief described above, Puma and its related companies will be released from any and all claims relating to its alleged collection,

retention, use, possession, capture, purchase, receipt through trade, obtainment, sale, profit from, disclosure, rediscolosure, dissemination, storage, transmittal, and/or protection from disclosure of alleged biometric information or biometric identifiers through the use of finger scanning clocks at Puma's Illinois facilities, including any violation of BIPA. (Agreement §§ 1.17-1.19, 3.1.)

## IV.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the Class Members received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011) ("*Schulte I*"). In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf. Given that *all* 128 members of the Settlement Class received individual direct notice, the effectuation of the notice plan readily satisfies due process.

The Court-approved notice plan here called for individual direct notice to all members of the Settlement Class via email and/or First-Class U.S. Mail, and the creation of the Settlement Website. (Dkt. 65 ¶¶ 7-10; Agreement § 4.1.) Pursuant to the notice plan, Puma provided Simpluris, Inc.—the professional Settlement Administrator appointed by the Court—with a class list containing the names, email address (to the extent available), and U.S. Mail addresses of all 128 members of the Settlement Class. (Agreement § 4.1(a); Declaration of Jacob Kamenir ("Kamenir Decl."), attached as Exhibit 3, at ¶ 5.) Once provided, the Settlement Administrator updated the U.S. Mail addresses through the National Change of Address database to ensure the

most up-to-date addresses possible. (Agreement § 4.1(b)(i); Kamenir Decl. ¶ 6.) The Settlement Administrator then sent the Court-approved Notice to every single class member, without exception, which was successfully delivered via email to 103 class members and via U.S. Mail to 123 class members. (Kamenir Decl. ¶¶ 15, 17.) Accordingly, direct notice was successfully delivered to 100% of the Settlement Class by either mail or email. (*Id.* ¶ 18.)

These notices directed class members to the Settlement Website, www.RamosBIPASettlement.com, which has been and continues to be available 24/7. (*Id.* ¶¶ 10-12.) On the website, Settlement Class members could and are still able to access the "long form" notice, access important court filings—including Plaintiff's Motion and Memorandum of Law for Attorneys' Fees, Expenses, and Incentive Award—see deadlines and answers to frequently asked questions, and see the date, time, and location of the Final Approval Hearing. (*Id.* ¶ 11.; Agreement §§ 1.26, 4.1, 5.1(e).) The website also allowed Class Members to update their address, select an electronic payment method (like PayPal, Venmo, or Zelle), and see deadlines and answers to frequently asked questions. (Kamenir Decl. ¶ 12; Agreement §§ 1.26, 5.1(e).) Over 30% of the Class Members have updated their address or elected to receive their payment electronically. (Kamenir Decl. ¶ 12.)

Overall, the Notice program was highly successful, as direct Notice reached 100% of the Settlement Class. This greatly exceeds what is required for due process.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is

subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the settlement treats class members equitably relative to each other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1, 2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

As the Advisory Committee for the 2018 Amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" the Court should also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); accord *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Courts in the Seventh Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and

adequate. *See, e.g., In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding factors set out by the Seventh Circuit demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A.   Plaintiff and Class Counsel have Adequately Represented the Class.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 c 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018). In considering this factor, courts are to examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See id.* at *4. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863.

The knowledge, negotiating position, vigor, participation, and conduct of Ms. Ramos and Class Counsel have not changed since this Court granted preliminary approval. (Dkt. 65.) Plaintiff Ramos's interests have remained aligned with the Settlement Class through the Notice process and preparation for final approval. Without Ms. Ramos stepping up to represent the class and taking on these tasks as the lead plaintiff, the relief secured for the Settlement Class wouldn't have been possible. Given her efforts and aligned interest with the class, there can be

no doubt that Ms. Ramos has only acted in the best interest of the Settlement Class and has adequately represented them.

Likewise, Class Counsel worked vigorously to protect the interests of the class and ensure that the class was represented beyond the simple "adequate" measure. First, the amount of investigation and discovery undertaken by Class Counsel ensured that they had adequate information to assess the strength of the case and engage in settlement discussions. For example, Class Counsel investigated the facts underlying Plaintiff's claims and the biometric technology at issue prior to filing the complaint, Class Counsel reviewed Puma's responses to Plaintiff's written discovery requests, and Puma produced informal discovery related to the size and composition of the putative class, as well as discovery regarding Puma's biometric consent forms.

After two years of investigation and discovery, the facts underlying Plaintiff's allegations in this case, though by no means their legal import, are now substantially undisputed: 128 of Puma's employees scanned their fingers on timeclocks at Puma's locations in Illinois in order to track their time without first providing any type of informed written consent related to the collection of biometric data and without access to a publicly-available retention and deletion schedule for their finger scan data. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

### B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.

The second factor in Rule 23(e)(2) requires the court to consider whether the proposed settlement is the result of arm's-length negotiations. *See Wong*, 773 F.3d at 864. The record here demonstrates only good-faith, non-collusive bargaining between the Parties. During the nearly two years spent litigating this case, the Parties exchanged formal written discovery and engaged in contested motion practice regarding Puma's motion to stay proceedings. The Parties also

11

engaged in months of contentious negotiations while the case was still being actively litigated. Throughout the negotiation process, the Parties informally exchanged information regarding the size and composition of the class, and Puma's biometric consent forms. (Ufkes Decl. ¶ 2.) Those negotiations led to a mediation with Judge Holderman (Ret.) in May of 2022 where, despite good faith efforts, the Parties were unable to reach agreement. (*Id.* ¶ 5.) Several months later in January 2023, with the Illinois Supreme Court preparing to issue a decision in *Tims*, the Parties re-engaged in settlement discussions and, following significant arm's-length negotiations, the Parties were finally able to reach an agreement the day before the *Tims* opinion was released. (*Id.* ¶¶ 6-7.) The Parties then spent the next several days negotiating the remaining of the deal, ultimately executing a binding Memorandum of Understanding on February 6, 2023. (*Id.* ¶ 7.)

The arm's-length nature of these negotiations is further confirmed by the Settlement itself: it is non-reversionary, provides significant cash payments directly to Class Members without the need to submit a claim form, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's-length negotiation"). For these reasons, there should be no question that the Settlement here was the result of good-faith, arm's-length negotiations and is entirely free from fraud or collusion. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 n.5 (N.D. Ill. Sept. 10, 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered") (internal quotations omitted).

### C.    The Settlement Treats Class Members Equally.

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Given that the Settlement Class here has nearly identical BIPA claims, the Settlement treats each of them identically. Defendant has established a non-reversionary fund of $179,200, from which each Class Member will automatically receive a single, pro rata cash payment after fees and costs are paid. (Agreement § 1.25.); *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund").

The Settlement also provides for identical prospective relief requiring Puma, if it continues to use biometric technology, to maintain a retention schedule for biometric data going forward, destroy all biometric data in its possession pursuant to that policy, and provide a BIPA-compliant notice and consent form to any employees from whom it collects biometric data. (Agreement § 2.2.) Further, each Class Member will release the same BIPA claims against Puma. (*Id.* §§ 1.17-1.19, 3.1.) Because the Settlement treats each Class Member equally, this factor is fully satisfied.

### D.    The Relief Secured for the Settlement Class is Adequate and Warrants Final Approval.

The final and most crucial factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; and (iii) the terms

of any proposed award of attorneys' fees, including timing of payment. *Id.*[3] This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (internal quotations omitted). This Settlement does so.

### 1. *The Relief Provided by the Settlement is Excellent.*

This Settlement provides outstanding relief to the Settlement Class. To start, Puma has agreed to create a $179,200.00 Settlement Fund which, after fees and costs, will be distributed directly to Class Members automatically via check or an electronic payment method, with no reversion of any remaining monies to Puma or any other Released Parties. Each and every member of the Class will automatically receive a substantial payment—approximately $740 if this Settlement is approved.

The history of privacy class actions is unfortunately one in which settlements often secure minimal or no cash relief to class members, and—in some cases—still happens to this day. *See, e.g., In re Google Plus Profile Litig.*, No. 5:18-cv-06164, dkt. 110 (N.D. Cal. Jan. 25, 2021) (approving $7.5 million fund that capped payments at $12 per claimant); *In re Google LLC Street View Elec. Commc'ns Litig.*, No. 10-md-02184-CRB, 2020 WL 1288377, at *11-14 (N.D. Cal. Mar. 18, 2020) (approving, over objections of class members and state attorneys

---

[3]     The fourth sub-factor, which requires the parties to identify any side agreements made in connection with the settlement, is inapplicable as there are no such agreements. Fed. R. Civ. P. 23(e)(2)(C)(iv); (Ufkes Decl. ¶ 9.)

general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach and granting $6.5 million in attorneys' fees and costs).

Many BIPA settlements have not fared better, providing only credit monitoring or reverting unclaimed funds back to defendants. *See, e.g.*, *Carroll v. Crème de la Crème, Inc*., 2017-CH-01624 (Cir. Ct. Cook Cnty. June 25, 2018) (credit monitoring only); *Zhirovetskiy v. Zayo Grp., LLC*, 2017-CH-09323 (Cir. Ct. Cook Cnty. Apr. 8, 2019) ($900,000 fund for 2,200 class members, which capped payments at $400 and reverted up to $490,000 of unclaimed funds back to defendant); *Lark v. McDonald's USA, LLC*, No. 17-L-559 (Cir. Ct. St. Clair Cnty. Feb. 28, 2022) (approving $50 million reversionary fund for more than 175,000 class members, which capped class member payments at $375 or $190 depending on date of finger scan and reverted tens of millions of dollars in unclaimed funds to defendants).

In stark contrast, the leading BIPA settlements create substantial non-reversionary funds and, where feasible, send payments directly to every class member without a claims process. But even compared to those leading BIPA settlements, this one excels—the $179,200 fund for 128 class members is among the highest per person relief ever secured in a BIPA case. *See Kane v. ConTech Lighting*, 2018-CH-12194 (Cir. Ct. Cook Cnty. Aug. 14, 2020) ($164,400 fund for 137 class members); *Cornejo v. Amcor Rigid Plastics USA, LLC*,  No. 18-cv-7018, dkt. 57 (N.D. Ill Sept. 20, 2020) ($175,000 fund for 125 class members); *Montgomery v. Peri Framework Sys., Inc.*, No. 20-cv-07771, dkt. 33 (N.D. Ill. Nov. 9, 2021) ($165,000 fund for 110 class members*); see also Bankhead v. Pacesetter Steel Service, Inc.*, 2021-CH-01325 (Cir. Ct. Cook Cnty. Apr. 21, 2023) ($90,400 fund for 113 class members); *Redmond v. Keystone Indus. Services, Inc.*,

2019-CH-11150 (Cir. Ct. Cook Cnty. June 25, 2020) ($79,500 fund for 106 class members); *Sherman v. Brandt Industries USA LTD*, No. 20-cv-01185, dkt. 85 (C.D. Ill. July 26, 2022) ($250,000 fund for 240 class members). Using any metric, the monetary relief under this Settlement is outstanding.

Finally, the non-monetary benefits created by the Settlement support approval. If Puma continues to use biometric technology, the Settlement requires it to obtain BIPA-compliant written releases before collecting such data, make all BIPA-mandated disclosures to employees, post a publicly-available retention and deletion policy related to biometric data, and destroy biometric data pursuant to that policy going forward. (*See* Agreement § 2.2.) Consistent with the Settlement, Puma has also deleted biometric data collected from former Illinois employees. (*Id.*) The prospective relief perfectly aligns with BIPA's statutory goals and the goals of this lawsuit.

### 2. *The Cost, Risk, and Delay of Further Litigation Compared to the Settlement's Benefits Favors Final Approval.*

"As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995). In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits. Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment.

The Settlement here meets both the 23(e)(2)(C) requirements and the Seventh Circuit's first and second factors because it provides immediate relief to the Settlement Class while avoiding potentially years of risky litigation and appeals, with both Plaintiff and Defendant believing that they have strong cases for their side. *See Schulte I*, 805 F. Supp. 2d at 586

16

("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). The risks here were not insignificant.

For example, on the merits, Puma was expected to assert—like nearly every other BIPA defendant—that the fingerprint data collected by its scanners are neither "biometric identifiers" nor "biometric information" covered by BIPA. Rather, the argument goes, the scanner merely scans a portion of a person's fingertip and creates an alphanumerical representation of the fingerprint (known as a "template" or "blob"), and any image of the fingerprint is immediately discarded. While Plaintiff seriously questions the merit of this argument, given that "biometric information" includes "any information, regardless of how it is captured, converted, stored, or shared" based on a fingerprint, *see* 740 ILCS 14/10, no court has ruled on this issue yet at summary judgment or trial. *Howe v. Speedway LLC*, No. 19-cv-01374, dkts. 125, 140, 149 (N.D. Ill.) (fully briefed motion for summary judgment on this issue in fingerprint scan case).

Plaintiff would also be required to use significant resources to litigate the issue of class certification. The Advisory Committee notes for the 2018 Amendments to Rule 23(e) suggest that courts should consider the likelihood of certifying a class for litigation in evaluating this sub-factor because the issue of litigating class certification is a salient one. While Plaintiff believes that she would ultimately prevail on certification issues given Puma's uniform conduct, class certification is still a significant hurdle and presents a risk to any class recovery. Were adversarial class certification to be granted, the possibility of an interlocutory appeal would still risk causing significant delay to any recovery. *Cf. Patel v. Facebook, Inc.*, 932 F.3d 1264, 1277 (9th Cir. 2019) (affirming class certification on interlocutory appeal in BIPA case filed four years earlier).

Even if Plaintiff had succeeded at summary judgment and/or trial, Plaintiff expects that Puma would have sought a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 963 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1756 (2023) (in TCPA case, vacating district court's denial of defendant's post-trial motion challenging the constitutionality of $925 million statutory damages award under TCPA and remanding for further proceedings); *but see U.S. v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process). Though the Illinois Supreme Court held in *Cothron* that a statutory violation—and the accompanying statutory damages—accrue every single time a BIPA violation occurs, i.e., every time an employee scans their fingerprint, the Court also suggested that any award of damages under BIPA is discretionary, not mandatory. *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004 ¶ 42. Therefore, while Plaintiff had a chance at securing awarded astronomical damages for the Class at trial, there was also a chance those damages would be dramatically reduced. *Id.* ("[T]here is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business."). There was no guarantee, even if Plaintiff had prevailed at class certification and trial, that she would receive the full available statutory damages. *See Rogers v. BNSF Ry. Co.*, No. 19-cv-03083, 2023 WL 4297654, at *9-10 (N.D. Ill. June 30, 2023) (Kennelly, J.) (vacating jury damage award and ordering new trial for jury to determine damages in light of the Illinois Supreme Court's finding in *Cothron* that BIPA's statutory damages are discretionary).

18

Finally, there is no guarantee that the Class Members would receive any benefit from protracted litigation. Protracted litigation is costly and time consuming, and it is possible that it "would provide [c]lass [m]embers with either no in-court recovery or some recovery many years from now . . ." *In re AT & T.*, 789 F. Supp. at 964. This Settlement provides immediate relief to Class Members, without the risk of protracted litigation. Thus, given the substantial risks, expense, and delay that would accompany further litigation, and in comparison to similar BIPA class action settlements, the Settlement offers substantial value relative to the strength of Plaintiff's case. This crucial factor therefore strongly supports final approval.

### 3.  *The Method of Distributing Relief to the Class Members is Effective and Supports Final Approval.*

The "effectiveness of [the]…method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:53 (6th ed.). Here, each and every member of the Settlement Class will automatically receive a Settlement Payment via check or electronic payment of the Class Member's choice (PayPal, Venmo, or Zelle). Once the Settlement is approved, the Settlement Administrator will distribute Settlement Payments to each Class Member for their *pro rata* portion of the fund. This well-recognized method of distributing monetary relief fully satisfies this aspect of Rule 23(e)(2)(C)(ii). *See Cruz v. The Connor Grp., LLC*, No. 22-cv-01966, dkt. 32 (N.D. Ill. Jan. 24, 2023) (Coleman, J.) (finally approving BIPA settlement with distribution via direct checks); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-02390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (Pallmeyer, J.) (same).

### 4. *The Terms of the Requested Attorneys' Fees are Reasonable.*

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of [the] proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice. (Dkt. 66.) The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the non-reversionary Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Agreement § 8.1.) To be sure, the percentage-of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and the requested percentage fee award is well in line with common fund fee awards in BIPA cases in this District. *See, e.g.*, *Cruz*, No. 22-cv-01966, dkt. 32 (N.D. Ill. Jan. 24, 2023) (Coleman, J.) (awarding 35% of the fund); *Alvarado v. Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (Pallmeyer, J.) (same); *Lopez-McNear*, No. 19-cv-2390, dkt. 69 (N.D. Ill. Apr. 27, 2021) (Pallmeyer, J.) (same); *Cornejo*, No. 18-cv-7018, dkt. 57 (N.D. Ill Sept. 20, 2020) (Pacold, J.) (same); *Neals v. ParTech, Inc.*, No. 19-cv-05660, dkt. 140 (N.D. Ill. July 20, 2022) (Valderrama, J.) (same). A lodestar cross-check further confirms the reasonableness of the requested fees: the 35% fee request here results in a negative multiplier (or discount) to Class Counsel's lodestar at 0.61, which means Class Counsel's lodestar exceeds the requested fee award. (*See* dkt. 66 at 16.) Accordingly, Class Counsel's request of 35% of the fund in attorneys' fees is reasonable.

Finally, if approved, the Settlement provides that attorneys' fees will be paid within five business days after final judgment, including any appeals. (Agreement § 8.1.) These terms are reasonable and should be approved.

**E.     The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement.**

In addition to the requirements that overlap with those now required by Rule 23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the settlement, the opinion of competent counsel, and whether the settlement raises any red flags that courts should be wary of. *Wong*, 773 F.3d at 863. Here, the positive reaction of the Settlement Class, the support of counsel, and the lack of red flags all favor approval.

### 1.     *The Reaction of the Settlement Class Favors Approval.*

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012). Here, the Court-approved Settlement Administrator diligently implemented the Notice plan outlined in the Agreement and the objection and exclusion deadlines have passed without a single person objecting to the Settlement or opting out of participating. That not one person has objected to or requested to be excluded from the Settlement is powerful evidence of the Settlement Class's support for the Settlement. *See McDaniel v. Qwest Commc'ns Corp.*, No. CV 05 C 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) (finally approving settlement with no objections and noting that "[a]n absence of objection is a 'rare phenomenon[]' and 'indicates the appropriateness of the request[]'") (citations omitted) (cleaned up); *see also Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (stating that "[t]he absence of objection to a proposed class settlement is evidence that the settlement is fair,

reasonable and adequate"). The total lack of objections or exclusions thus strongly supports granting final approval to the Settlement.

## 2. *Experienced Counsel's Belief that the Settlement is Beneficial to the Class Weighs in Favor of Final Approval.*

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte I*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship*, 2001 WL 1568856, at *3 (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiff's motion for preliminary approval (dkt. 60 at 22-25), Class Counsel are competent to give their opinion on this Settlement. Put simply, and for the reasons discussed above, Class Counsel believe that the Settlement provides outstanding monetary and prospective relief without the uncertainty and delay that years of litigation would bring. (Ufkes Decl. ¶ 10.) That is certainly in the best interest of the Settlement Class. (*Id.*)

For these reasons, the opinion of Class Counsel weighs in favor of final approval.

## 3. *The Settlement Raises No Red Flags.*

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our Court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel

and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii) providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no subgroups to this class, and the Class Representative, Plaintiff Ramos, has no familial relationship with Class Counsel or any member of Edelson PC. Class Members will automatically receive Settlement Payments, without the need to submit a claim. Any unawarded attorneys' fees will be distributed to the Class Members, if feasible, and will not revert to Puma (Agreement § 2.1(e)-(f)); there has been no advance of attorneys' fees to Class Counsel; and there is no provision in the Settlement Agreement denying an incentive award to a named plaintiff who does not support the Settlement.

The Settlement here is beneficial to Class Members and displays no warning signs that should give this Court pause. The Settlement should therefore be approved.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order finally approving the Parties' Settlement and ordering such other relief as this Court deems reasonable and just.[4]

Respectfully submitted,

**JOSELYN RAMOS,** individually and on behalf of all others similarly situated,

---

[4]    For the Court's convenience, Plaintiff will submit a proposed final approval order to the Court's designated email address prior to the August 16, 2023 final approval hearing.

Dated: August 9, 2023                                    By: /s/  Schuyler Ufkes

J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378